FRITZ *v.* RUDY FURNACE CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—POWER OF INDUSTRIAL ACCIDENT BOARD TO ORDER ARBITRATION NOTWITHSTANDING UNAPPROVED SETTLEMENT.

   Where an injured employee wrote to the industrial accident board canceling the hearing on his claim and stating that he had settled with his employer and its insurer, but said settlement agreement was never submitted to, or approved by, the industrial accident board, the board had the right, if not the duty, to order arbitration of said claim regardless of said alleged settlement.

2. SAME—IRREGULARITY IN ARBITRATION PROCEEDINGS NOT INVOLVED IN FINAL HEARING.

   While the appearance of a deputy commissioner of the industrial accident board as attorney for plaintiff at the arbitration hearing was indefensible and highly improper, such irregularity is not involved in the final hearing before the full board which has no power to vacate the arbitration proceedings or to order another arbitration, but hears the case *de novo* and determines it upon the testimony already taken, and such additional testimony as the parties may submit.

3. SAME—POWER OF SUPREME COURT ON REVIEW.

   The power of the Supreme Court, on review of an award under the workmen's compensation act (2 Comp. Laws 1915, § 6465), is to review questions of law involved in the final determination of the board, and make such order in respect to such final determination as justice may require.

4. SAME—FINDING OF BOARD SUSTAINED BY EVIDENCE.

   Testimony that an employee, a laborer in a foundry, was injured in the side by the slipping of a bull ladle from which he was assisting to pour molten iron, and that an attack of appendicitis which immediately followed was probably caused thereby, *held*, sufficient to sustain an award of compensation therefor under the act, although

Authorities discussing the question as to what is an accident within the meaning of workmen's compensation acts, in general, are collated in notes in L. R. A. 1916A, 29, 227; L. R. A. 1917D, 103; L. R. A. 1918F, 867.

there was also testimony that the appendicitis was caused by an attack of influenza.

5. SAME—APPENDICITIS CAUSED BY INJURY ACCIDENTAL.
   An attack of appendicitis caused by an accidental injury to the side is an accidental personal injury within the meaning of the workmen's compensation act.

6. SAME—EMPLOYEE'S PREDISPOSITION TO DISEASE AGGRAVATED BY INJURY IMMATERIAL—ACCIDENTAL INJURY.
   That plaintiff's disability may have resulted from the accidental aggravation of a chronic ailment, and that he may have been predisposed because of disease to an attack such as befell him, *held*, immaterial in determining the question as to whether his injury was accidental.

Certiorari to Industrial Accident Board.  Submitted January 25, 1922.  (Docket No. 145.)  Decided June 5, 1922.

Peter Fritz presented his claim for compensation against the Rudy Furnace Company for injuries received in defendant's employ.  From an order awarding compensation, defendant and the State Accident Fund, insurer, bring certiorari.  Affirmed.

*Kerr & Lacy*, for appellants.

CLARK, J.  On January 29, 1920, plaintiff, a laborer in a foundry, was assisting in pouring molten iron from a bull ladle, which when filled weighed about 800 pounds.  From opposite sides of the ladle a bar four or five feet in length projected, which at each end was divided into two handles between which a man stood when pouring, the ladle being supported by a bench.  Plaintiff and a fellow workman had poured part of the metal,—

"*A.* When she slipped and gave me that wrench.
"*Q.* What slipped?
"*A.* Why, that bull ladle.
"*Q.* What did it slip in?

"*A*. On the benches it was setting on. It got caught and I went to pull on it and it came back. She slipped and wrenched me.    *    *    *

"*A*. I don't know where it slipped, but it slipped. When I was turning it, when I wanted to come back on it, it slipped.

"*Q*. It slipped as you were coming back?

"*A*. When she went down, when I took her down.

"*Q*. On which side?

"*A*. On the left side. Then when I started her back, she didn't come and I gave a strain on it and she slipped and she came back with force and just twisted me that way and I held on with one hand and pushed down with the other.

"*Q*. Which hand did you push down with?

"*A*. I pushed down with this hand. If I had let it go back it would have burned the other men; I held with this hand and pushed with the other; it wrenched me when it slipped.    *    *    *

"*A*. When I came back and I went to pour on the right hand side and when I put my felt on the right hand side it hurt me and I said I am getting sick to my stomach.    *    *    *    In the meantime Burt took the ladle and I started away and that was the last I knew until I came to in the hospital."

Another witness said that plaintiff received a jerk—a hard jerk. Plaintiff testified that when he was so jerked or wrenched he felt a pain in the region of the appendix, and that he had suffered no similar pain before and he also claims some persistence of the pain in his side following the accident.

The employer called a physician whose opinion was that plaintiff had been overcome by the heat of the foundry room, and he was treated accordingly at the hospital where he remained nine days. The physician testified that while at the hospital plaintiff suffered a mild attack of influenza, but this plaintiff's testimony tends to deny.

On February 13, 1920, another physician found plaintiff suffering from appendicitis for which he was treated and later operated May 4, 1920. There was

testimony that the appendicitis was chronic, there being hard and extensive adhesions, and that plaintiff might have been so afflicted at the time of the accident. Connecting the appendicitis with what befell plaintiff at the foundry, physicians testified:

"I would say with the accident he would be more apt to have it. Receiving an injury of that kind would lower resistance and would be a factor. * * *

"Yes, sir. I think it would be impossible in a case of the kind to eliminate the blow if he got a strain. * * *

"I am not speaking about this man particularly, this particular case, but cases in general. If a man received an injury such as a strain or blow on the side I think it would be a predisposing factor. * * *

"Just so far as is due to infection this accident may have been a factor in lowering the resistance so that this infection would become active. I can't say that the appendicitis was caused by the accident and I cannot say it was not. I think it was probably a predisposing cause. * * *

"Q. This man had chronic appendicitis?

"A. I would say so, yes, sir.

"Q. That might have extended over a period of years on January 29, 1920?

"A. It might have extended beyond that point, but in eliciting his history very carefully he repeatedly told me he had no trouble with the appendix previous to the injury.

"Q. And on that history you base your opinion that the injury caused the appendicitis?

"A. Considering his statement as we always consider the statement of a patient, it would be reasonable to conclude that was it."

There was medical testimony that appendicitis might be caused by influenza, but the board found, in effect, that plaintiff had not suffered an attack of influenza, as claimed.

There was report of an accident, and after notice and application for adjustment of claim, plaintiff sent the board the following letter:

"Dowagiac, Mich.,
"June 8, 1920.

"Mr. FRED H. JOHNSON, Sec'y.,
    "Industrial Accident Fund,
        "Lansing, Michigan.
    "*My dear Mr. Johnson:* I have this date sent you
a telegram as follows:
        'Cancel hearing on my claim against Rudy
        Furnace Company and State Accident Fund
        —they have settled—letter follows.'
    "In explanation I want to advise that the writer
does not consider himself able to attend the hearing
on account of his own condition, and the State Acci-
dent Fund through the Rudy Furnace Company have
settled the case in a manner satisfactory to me.
    "I thank you for your courtesy in this matter and
beg to remain,

                    "Yours very truly,
                        "PETER FRITZ."

It seems that the substance of the agreement be-
tween the parties was that the bills of the hospital
and the physicians be paid, and it seems they were
not paid.    Approval by the board of such agreement
was neither sought nor given.

Ignoring the letter, the board ordered arbitration,
at which plaintiff appeared and said he did not want
a hearing.    The hearing was adjourned indefinitely
by the deputy commissioner in charge.    The board
again ordered arbitration at which plaintiff appeared
and testified in support of his claim for compensation.
The arbitration committee consisted of a deputy com-
missioner and two other members.    Defendant was
represented by counsel.    As counsel for plaintiff,
deputy commissioner Derham appeared, who, when
questioned as to his authority to appear, said: "I
appear in behalf of the State of Michigan."    Objec-
tion being made to his so appearing, he said:

    "The respondent in this case and the State accident
fund have by every possible means availed themselves
of every technicality in this case.    For that reason it

has been necessary for the industrial accident board to send a representative to Dowagiac to see to it that this applicant's interest is looked after."

Defendant's motion to dismiss on the ground that the claim of plaintiff had been withdrawn was overruled. Plaintiff had award of $12.60 per week, and that the total of such weekly payments then due was $604.80, and for medical and hospital bills under the act, which award on review was affirmed by the board, it being found that what befell plaintiff at the foundry as stated was an accidental personal injury arising out of and in the course of his employment, and that the disability resulted from the injury. Defendants bring certiorari.

1. That it was the right, if not the duty, of the board to order arbitration regardless of the alleged agreement in settlement or waiver, or release of compensation, is settled by the opinion of this court in *Dettloff* v. *Hammond, Standish & Co.*, 195 Mich. 117.

2. The service by the deputy commissioner as an attorney for plaintiff at the arbitration is indefensible, beyond the scope of his statutory duties and powers, and is without right of compensation by the State. The duties of the board are *quasi*-judicial. The judicial mind opposes one's being both judge and advocate in a cause. Such practice brings an administration of the law into disfavor. But the board on review had no power to vacate the arbitration proceedings, to order another arbitration, or to grant a rehearing on arbitration. See *Jones* v. *St. Joseph Iron Works*, 212 Mich. 174, where it was said:

"When the arbitrators make their award either for or against the plaintiff, that award fixes the rights of the parties, and these rights are, in the absence of fraud, irrevocably fixed unless the board on review, hearing the case *de novo*, upon the testimony already taken, and such additional testimony as the parties may submit, reaches a different conclusion. In this

way, and this way alone, may the award of the arbitrators be set aside."

The power of this court as expressed by the statute is to review questions of law involved in the final determination of the board and to make such orders in respect to such final determination as justice may require. Section 5465, 2 Comp. Laws 1915. The irregularity in the arbitration is not involved in the final determination of the board, and, therefore, cannot affect the result here.

3. The board in its findings disregards the testimony of the physician called by the employer as to plaintiff's being overcome by the heat and finds an accidental personal injury under the act, from the testimony of the plaintiff and his fellow workman in respect to the wrenching, twisting, and jerking suffered by plaintiff because of the slipping or catching of the ladle, and the pain then suffered by plaintiff in the region of the appendix, and the subsequent history of his ailment. The finding has evidential support and therefore is sustained.

That what befell plaintiff was an accidental personal injury under the act, see: 14 N. C. C. A. p. 527; *Schanning* v. *Standard Castings Co.*, 203 Mich. 612; *Robbins* v. *Original Gas Engine Co.*, 191 Mich. 122; *Grove* v. *Michigan Paper Co.*, 184 Mich. 449.

The finding by which influenza as a cause of the disability was eliminated may not be said to have no evidence to sustain it. Nor can we say that there is no evidence that the subsequent disability and the appendicitis are not attributable to the accident. To do so would ignore certain of the medical testimony upon which the board based its finding as to the disability. The medical testimony here is distinguishable from that reviewed in *Weidner* v. *Northway Motor & Manfg. Co.*, 205 Mich. 583, cited by counsel. And that plaintiff's disability may have resulted from the

accidental aggravation of a chronic ailment and that he may have been predisposed because of disease to this form of attack have nothing to do with the question of whether what befell him is to be regarded as an accident. *La Veck* v. *Parke, Davis & Co.*, 190 Mich. 604; *St. Clair* v. *Meyer Music House*, 211 Mich. 285; 10 N. C. C. A. 756.

The award is affirmed.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.