SYDE'S CASE.

Androscoggin    Opinion July 17, 1928.

*Harold L. Redding*, for petitioner.
*Reginald H. Harris*, for respondants.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT,
PATTANGALL, JJ.

BASSETT, J.    Appeal from the decree of a single justice affirming the decree of the Associate Legal Member of the Industrial Accident Commission granting compensation.

The petitioner, an employee of a corporation dealing in automobiles, claimed that in lifting a motor from the floor to a display stand he received a strain, which caused appendicitis and an operation therefor.

The same principles of law apply to this case as to *Mamie Taylor's Case*, 127 Me., which was also a case of alleged injury due to strain. In that case the question was whether the strain caused an injury, the determination of the nature of which and whether such injury caused death being based on diagnosis. In the instant case the question is whether the strain caused an injury the nature of which was definitely determined by an operation.

The question for determination is whether there was some competent evidence upon which the finding of the commissioner, that there was causal connection between the strain and the appendicitis, can be based and can be "supported by rational and natural inferences from proved facts," or whether the finding was "speculation, surmise or conjecture." *Mailman's Case*, 118 Me., 172; *Butt's Case*, 125 Me., 245; *Strout's Case*, 126 Me., 579.

The alleged accident occurred in the early afternoon of Saturday, April 30. The motor weighed from three hundred and fifty to four hundred pounds. Syde at one end of the motor and a co-employee at the other lifted it from the floor to the display stand, which was of such height that Syde could not lift the motor up on to it, standing flat on his feet, but rose on his toes and lifted higher still with his arms and full strength. As he was about to set the motor down on the stand he felt a pain in his right groin and remarked to his co-employee he thought he had snapped something. The pain was so severe he was obliged to quit work, went home and laid down. He went to the garage the next day but did no work and, not feeling well, went home again in the afternoon. He was at the garage the most of the forenoon on the following day but did no work requiring lifting and felt so mean he consulted in the afternoon a doctor who made an examination and a few hours later operated for appendicitis. Syde was laid up four weeks.

Prior to the lifting Syde was apparently in good health and never had had appendicitis before to his knowledge.

The doctor, who operated and attended, testified that from the history of the case given him by Syde and from the fact that he had not had appendicitis before, he expected, as he began the examination to find hernia but all the symptoms found on the examination pointed to appendicitis, which conclusion was confirmed by a blood test that showed the necessity of immediate operation. He found the appendix acutely inflamed and distended to twice its normal size. He did not find in it any pus, fecal matter, gas or other content, nor did he find any adhesion indicating a prior attack. This appendix was on the inner side of the caecum, the sac which makes a connection between the small and large intestine, and its position therefore was about half way through the body. An appendix is a flexible, wormlike appendage from the lower end of the caecum, is composed of muscle and mucous membrane, and surrounded by flexible substances.

He was of the opinion that the inflammation had started within two days, the time since the lifting and was caused by a sudden severe strain in the lifting. "That is what I attribute it to. The position that the man was standing in and straining on his toes and bringing the abdominal muscles into play at that moment, I would call traumatism, that is, the injury to those parts below the contracted muscles, just like if the muscles were contracted tightly and the man should fall on the corner of the table or a chair. That is traumatism and to my mind that is the same thing and it weakened that place or brought congestion there and with the contents of the bowel, some of the material passed through the lumen of the appendix and appendicitis resulted."

He was carefully examined to ascertain the reasons for his opinion and to explain how the appendix, formed and located as it was, could be subject to contact from and be injured by tightened, contracted abdominal muscles, which would, as he admitted, give even pressure from such contraction. His answers showed that he assumed some facts which were different from the undisputed facts of the evidence, that the rational, natural conclusions to be drawn from some of the undisputed facts were contrary to the conclusions he drew and that some of his conclusions were, as

he said, "getting into the realm of supposition" and that no reason, which he gave, seemed a natural, rational inference and conclusion from the undisputed facts.

The value of an opinion may be much increased or diminished by the reasons given for it. *Palmer* v. *Blanchard*, 113 Me., 380. Its value may be diminished to the point where it has no probative value.

We think that was the result here and the opinion of the doctor was not of probative value to prove a causal connection between the strain and the appendicitis.

One other doctor, who had nineteen years' experience and had operated may times for appendicitis, called as an expert by the defendant, testified that while he would not "say it was out of the bounds of possibility," he had never met a case where the appendix was inflamed by a strain of the abdominal muscles. He had seen it caused by a traumatic blow which had ruptured some of the vessels.

Expert medical testimony is not absolutely essential to the establishment of truth. It is not always essential to the making of sound deductions. It is of very great importance and of value. The commissioner's conclusion, if natural and rational, must stand "notwithstanding its supporting evidence is not viseed by an expert." *Swett's Case*, 125 Me., 389, 391. We think that the medical testimony in this case was, as to the causal relation between the strain and the appendicitis, speculation, surmise or conjecture.

The commissioner in his decree found that "the strain was so bad as to cause immediate cessation of labor although employee tried to work after that and the operation came very shortly thereafter................There appeared no other cause for the injury."

The strain either caused, or aggravated and accelerated, or coincidentally revealed the appendicitis.

There was no evidence of or claim that there was an existing condition at the time of lifting which was accelerated. See *Orff's Case*, 122 Me., 114.

We think that finding the strain caused the appendicitis was upon the evidence in the case and in the light of the medical testi-

mony a conclusion of speculation, surmise or conjecture and not based upon competent evidence.

In *Fritz* v. *Rudy Furnace Co.*, 118 N. W., 528 (Mich.), the evidence differed from that in the instant case.

*Appeal sustained.*