IN RE GRANT
CHRISTENSEN, STATE TREASURER v. GRANT

(No. 2120; July 11, 1939; 92 Pac. (2d) 563)

For the plaintiff in error, the cause was submitted on the brief of *Ewing T. Kerr*, Attorney General; *Harold I. Bacheller*, Deputy Attorney General; and *Arthur Kline*, Assistant Attorney General, of Cheyenne.

For the defendant in error, the cause was submitted on the brief of *Thomas O. Miller* of Lusk.

RINER, Chief Justice.

This cause arose under the Workmen's Compensation Act of this State and is a proceeding in error brought by the State Treasurer to review an award made by the district court of Niobrara County, in favor of the workman and claimant, Neil Grant, for temporary total disability, in the sum of $192.64. No question is pre-

sented concerning the amount of the award. The facts involved are briefly these:

The claimant was employed by his brother, Maurice Grant, from July 7, 1938, to July 18 of that year, to assist in doing some plowing with a tractor. These men were engaged in excavating ground in order to level off some yards around houses at an oil company's plant in the Lance Creek Oil Field. On the date last mentioned, in the afternoon, Maurice Grant was driving the tractor to which a plow was attached in order to supply the necessary operating power, and Neil Grant was holding the handlebars of the plow, which was of the road or "breaking plow" variety. When the plowing work was almost completed the plow struck a hard lump of dirt, which, as the claimant testified, suddenly "raised the plow up, and, of course, I was braced and had my weight against it, trying to hold it in the best I could, and it throwed me down. The plow never struck me, but it threw me off to one side—it came so fast when it came." Immediately after this strain, according to claimant's testimony, he experienced "terrible cramps and pain" in the region of his stomach. He nevertheless endeavored to continue working, but shortly thereafter, about four o'clock, was obliged to stop on account of the pain. About eight o'clock that evening he was taken to Lusk to consult a physician. By that time the pain had become to a large extent localized on the right side of claimant's abdomen. The doctor diagnosed the ailment as appendicitis and sent claimant to a local hospital. Treatment with ice packs on his side and stomach was applied continuously until about seven o'clock on the evening of the following day, the 19th of July, when claimant submitted to an operation for appendicitis. There were no cuts, visible bruises or discolorations on claimant's body as a result of the strain and fall aforesaid. Prior to this strain and fall herein above described, claimant had always expe-

rienced good health and had never had any pain in his stomach, abdomen or side.

The surgeon who performed the operation testified that the claimant's blood count showed "an elevation of the white blood corpuscles or blood cells"; that the operation was performed upon the diagnosis that the claimant had "an acute appendix and that was exactly what we found"; that the appendix when removed was discovered to be "moderately inflamed"; that it had not reached the stage of pus formation or the stage of rupture; that it would be possible for the injury the claimant received when he was thrown, after hanging on to the plow, and being strained, to cause the condition which finally resulted in the removal of claimant's appendix; that he could not say that the injury suffered by claimant "was the sole cause of this appendicitis—nobody can say that—but it is listed as a possible, predisposing cause"; that if claimant received a sudden wrench and strain, whereby he was thrown to the ground "the rupture of certain blood vessels internally could have caused this condition of the appendix."

The claimant's attending physician and a former State Health Officer of this State for some eight years, testified that when claimant was strained and thrown by the plow this may have caused "this condition of the appendix." No additional medical evidence was submitted by any of the parties.

The employer's report was to the effect that the workman would claim compensation; that the accident "grew out of his employment," and that it was not due solely to his culpable negligence.

The trial was to the court on November 28, 1938, without a jury, and it was found in substance that the workman was injured while in the employ of Maurice Grant on July 18, at Lance Creek, Wyoming, resulting in acute appendicitis, and that an award should be made, and accordingly was made, as hereinabove stated.

The only question presented is whether upon this record the order of the district court adjudging the award is sustained by sufficient competent evidence. The question arises in view of Section 124-106-7, W. R. S., 1931, as amended by Section 2 of Chapter 128, Laws of Wyoming, 1937, subdivision "(m)", which reads:

"The words 'injury and personal injury' shall not include injury caused by the wilful act of a third person directed against an employe for reasons personal to such employe, or because of his employment; nor a disease, except as it shall directly result from an injury incurred in the employment."

More precisely the contention of the State Treasurer is that the record in this case is devoid of any proven causal connection between the accident which befell the claimant during the plowing and the attack of appendicitis.

The following authorities briefly reviewed will, we think, supply aid in reaching a proper disposition of this case.

In Associated Seed Growers, Inc. v. Scrogham, 52 Wyo. 232, 73 P. (2d) 300, where the medical evidence was "that the strain of lifting could produce" a rupture of weak blood vessels in a workman's eye and that the workman "would notice red color when looking at a light immediately upon a hemorrhage taking place," a sensation which the workman in that case testified he had experienced after lifting a heavy sack of beans, it was held that the court could properly infer that the workman suffered an accidental compensable injury.

An accident occurred, as stated by the court, in Watkins v. Brunswick Restaurant, 123 Neb. 212, 242 N. W. 439,

"when the plaintiff was standing on a table in the restaurant so that she might reach the overhead shelves. And while in this position, she grasped a board which

became loosened and she fell backward striking her right side on a table. Two days passed before the plaintiff consulted a physician and upon his advice she rested for several days. But when she returned to work she was compelled to stop within an hour on account of her injury. And her appendix was removed by two physicians that evening.

"One of the physicians testified that the plaintiff's appendix was 'red and inflamed, more so at the tip.' And in answer to a hypothetical question as to whether the attack of appendicitis could have been caused by the fall, this physician made this general statement: 'The opinion I have would be that she may have had a diseased appendix, and if she did, having received the blow of that kind might light up this appendix.' "

In the course of the opinion filed therein the court remarked:

"From a review of the authorities it appears that injuries resulting in the removal of an appendix in the injured person are compensable under the provisions of the Workmen's Compensation Act. And it also appears that, while there is a lack of entire harmony by medical authorities in respect thereof, a trauma or blow may cause appendicitis. In the present case there was no bruise on the plaintiff's abdomen as a result of her fall, but from the evidence of her physicians it appears that a severe trauma might be occasioned to the internal organs without outward evidence of such injury."

The conclusion was that the woman's injury was compensable.

Where a foundry ladle slipped, whereby a workman suffered a wrenching, twisting and jerking of his body, followed closely by a subsequent attack of appendicitis, the verbatim pertinent medical evidence, as recited by the court, in Fritz v. Rudy Furnace Co., 218 Mich. 324, 188 N. W. 528, was as follows:

"Connecting the appendicitis with what befell plaintiff at the foundry, physicians testified:

" 'I would say, with the accident, he would be more

apt to have it. Receiving an injury of that kind would lower resistance, and would be a factor.'

" 'Yes, sir; I think it would be impossible in a case of the kind to eliminate the blow, if he got a strain.'

" 'I am not speaking about this man particularly, this particular case, but cases in general. If a man received an injury such as a strain or blow on the side, I think it would be a predisposing factor.'

" 'Just so far as is due to infection, this accident may have been a factor in lowering the resistance, so that this infection would become active. I can't say that the appendicitis was caused by the accident, and I cannot say it was not. I think it was probably a predisposing cause.'

" 'Q. This man had chronic appendicitis? A. I would say so; yes, sir.

" 'Q. That might have extended over a period of years on January 29, 1920? A. It might have extended beyond that point, but in eliciting his history very carefully he repeatedly told me he had no trouble with the appendix previous to the injury.'

" 'Q. And on that history you base your opinion that the injury caused the appendicitis? A. Considering his statement, as we always consider the statement of a patient, it would be reasonable to conclude that was it.' "

Affirming an award of compensation to the injured workman, the court said:

"The board in its findings disregards the testimony of the physician called by the employer as to plaintiff's being overcome by the heat, and finds an accidental personal injury under the act, from the testimony of the plaintiff and his fellow workman in respect to the wrenching, twisting, and jerking suffered by plaintiff, because of the slipping or catching of the ladle, and the pain then suffered by plaintiff in the region of the appendix, and the subsequent history of his ailment. The finding has evidential support, and therefore is sustained. That what befell plaintiff was an accidental personal injury under the act, see 14 N. & C. C. 527; Schanning v. Standard Castings Co., 203 Mich. 612, 169 N. W. 879; Robbins v. Original Gas Engine Co.,

191 Mich. 122, 157 N. W. 437; Grove v. Michigan Paper Co., 184 Mich. 449, 151 N. W. 554. * * * *

"Nor can we say that there is no evidence that the subsequent disability and the appendicitis are not attributable to the accident. To do so would ignore certain of the medical testimony upon which the board based its findings as to the disability."

An employee's "work consisted of sorting blocks conveyed from saws. The blocks measured 2 inches by 2⅜ inches, and from 6 to 20 inches in length. While so engaged, at about 10 o'clock in the morning, on June 7, 1923, one of the blocks was thrown from a saw and struck respondent on the right side of the abdomen. Almost immediately she complained of severe pain, and suffered from nausea. The following morning her doctor determined that she was suffering from acute appendicitis, which condition continued for 11 days, at which time an operation for the removal of the appendix was performed. The appendix was found to be three times normal size, and had reddened veins, showing it to be in a condition of inflammation. Her claim was presented to the Department of Labor and Industries, under the Workmen's Compensation Act, and was by it rejected, on the ground that 'claimant's condition was not the result of the accident, within the meaning of the Compensation Act." An appeal was taken from that decision to the superior court, which, after a trial without a jury, found and concluded, in favor of respondent, that her injury was the cause of the appendicitis, and that she was entitled to recovery." An appeal was taken from this award. Affirming it, the supreme court of Washington, in its decision in Clark v. Department of Labor and Industries, 131 Wash. 256, 230 P. 133, referring to the testimony of the physicians in the case, said:

"There is a direct conflict between the testimony of the doctors. Those for respondent, including the physician who treated respondent immediately after the

injury, and continued the treatment until after the operation, testified that appendicitis can be superinduced by trauma. Trauma means any injury to the body caused by violence; also the violence that causes it. New Standard Dictionary.

"The chief medical officer of the department seemed to be very positive in his views that appendicitis does not result from accident; that nothing could change his mind on that subject."

Relative to the conclusion reached by the trial court, it was further indicated that:

"The trial court, while properly holding that the department's decisions are entitled to great weight, and that the burden is upon the injured person to overcome the weight of the department's decisions, held, with the physicians testifying for respondent, that the blow caused the appendicitis.

"The view of the trial court and the physicians testifying for respondent is fortified by an article in the American Medical Association Journal, of May 19, 1923, by Dr. Luddington, of New Haven, Conn., in which medical writers of world-wide fame were quoted, to the effect that appendicitis may be, and often is, caused by a blow on the abdomen, or severe muscular strain. Dr. Osler, the famous English medical authority, was quoted to the effect that, 'Trauma plays a very definite role, and in a number of cases, the symptoms have followed very closely a fall or a blow.' This article in itself is very logical and convincing."

In Beach Const. Co. v. Sullivan, 13 N. J. Misc. 582, 179 A. 847, the court used this language:

"Sullivan, unassisted, was in the act of lifting a radiator of more than 300 pounds weight. He experienced a slight blow from the radiator, felt a sharp stinging pain in the location of the appendix, fell to the floor, where he remained in agony for about ten minutes, was placed in bed for a few hours, then taken to the hospital, and there, the next morning, was operated upon for appendicitis. That the lifting of the radiator was in the course of his employment and that, when operated upon, he actually had an acute appendicitis, are accepted facts.

"Prosecutor contends that the radiator incident was neither the underlying nor the provoking cause of the appendicitis. The deputy commissioner, sitting for the Workmen's Compensation Bureau, found that Sullivan had not carried the burden of proving the affirmative to that proposition, and therefore dismissed the application for compensation. The common pleas, on appeal, found to the contrary, and granted temporary compensation from January 31, 1933, to June 5, 1933, together with medical and hospital expenses. We have reviewed the testimony and find substantial support, including expert medical testimony, for the judgment in the common pleas. The proofs sustain the finding in that court."

See also Lindquest v. Holler, 164 N. Y. Supp. 906; Thomseth v. Shapiro Bros. Launderers & Dry Cleaners, Inc., 183 Minn. 270, 236 N. W. 311.

Dr. Kessler in his book on Accidental Injuries, Page 394, says:

"The proof of the initiation or aggravation of an appendicitis as the result of accident rests on the following postulates:
"1. No symptoms or sign of appendicitis should have existed before the accident and the individual must have been able to work.
"2. Severe injury of the abdomen or a real overexertion must be proved.
"3. Severe evidence of illness must be proved at once which leads to immediate cessation from work. An interval of two to three days without any symptoms and with full ability to work makes the asserted relation improbable."

That courts and medical experts have taken divergent views in cases of this kind is evident from an examination of the following cases: See Syde's Case, 127 Me. 214, 142 A. 777; Reynolds v. City of Shreveport, (La. App.) 155 So. 469; Wolf v. National Grocery Co., 182 A. (N. J. Ct. Com. Pleas) 625. In this last cited case before the Referee for the New Jersey De-

partment of Labor, 180 A. 625, it may be noted that a different conclusion was first reached.

It would appear that the medical proof relative to the causal connection between the accident testified to by the claimant and the subsequent attack of appendicitis in the case at bar was quite as positive and convincing as in the decisions above reviewed, where awards were upheld on review.

Although opportunity was afforded both the employer and the State Treasurer to introduce medical testimony in opposition to that produced on behalf of claimant, if deemed advisable, no such testimony was forthcoming.

There was also the workman's own testimony in this regard, to which the trial court was entitled to give full credence. It was, of course, undisputed. It was urged for the State Treasurer that there was no corroboration of this testimony, but the employer stated on the witness stand that his brother complained of being ill during the course of the plowing work and endeavored to work thereafter, but could not on account of again becoming sick. Summed up claimant's evidence amounts to this: He had never before in his life had an attack of appendicitis until July 18, 1938. On that date he experienced a strain while plowing; intense pain immediately followed, eventually becoming localized in the lower right quadrant of his abdomen; he was treated by his doctor for appendicitis when he consulted a physician that very night; this treatment continued until seven o'clock the following evening, when an operation disclosed to a certainty that he possessed an inflamed appendix. So far as we can perceive it was a reasonable inference that could be drawn by the trial judge that the strain was the direct cause of the inflamed condition of the organ within the postulates mentioned by Dr. Kessler.

It is reasonably well settled that circumstantial evi-

394

dence may be sufficient to support an award. 71 C. J. 1086 and list of cases cited. The facts and circumstances from which the ultimate fact to be proven is inferred, however, must be, says the Court of Appeals of Kentucky in Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S. W. 142, "so related to each other that an inference of liability may be fairly drawn without being based upon mere guess, conjecture, or surmise."

We are unable to say from our examination of the record that the trial court wrongly interpreted the evidence therein, or that the conclusion reached was so erroneous or that the award is so based on mere conjecture or guess that the judgment should be reversed. That being so the judgment of the district court of Niobrara County will, therefore, be affirmed.

*Affirmed.*

KIMBALL, J., and BURGESS, D. J., concur.