**Louis TIKO**

v.

**HIRAM RICKER & SONS, INC., and Employers Insurance of Wausau.**

Supreme Judicial Court of Maine.

March 31, 1969.

Skelton, Taintor & Abbott, by Charles H. Abbott, and William F. Julavits, Lewiston, for appellant.

Robinson, Richardson & Chapman, by Clement F. Richardson, and Robert L. Hazard, Jr., Portland, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

TAPLEY, Justice.

On appeal. This case is presented to the court on appeal by the defendants from the pro forma decree of the Superior Court granting the petitioner total disability in the amount of $33.73 per week until further order of the Commission. The petitioner, on August 21, 1965, fell on some steps in the Poland Spring House in Poland, Maine, where he was working. He and another man were taking a vehicle containing a covered tray which contained some 200 pounds of dishes down the steps when he fell. He claimed compensable injuries resulting from the fall.

Appellants' points of appeal are:

"1. The Commission erred in making a finding that the employee received a personal injury by accident arising out of and in the course of his employment.

"2. The Commission erred in issuing a decree dated March 7, 1968 wherein they stated that they were unable to issue a decree because they required further evidence. Following this the Commission

erred in reassigning the case for a hearing on the issue of wage information. The Commission had already made a determination, therefore, the Commission Decree dated April 26, 1968 was in error.

"3. The Commission erred in its order of payment of compensation at $33.73 per week until further order of the Commission of its Decree of April 30, 1968.

"4. The Commission erred in issuing a Decree dated November 28, 1967 ordering another hearing because the employee had failed to present medical evidence.

"5. The Commission erred in finding that the employee was entitled to total incapacity."

The Commissioner issued three decrees in the case heard before him. There was a hearing held on November 17, 1966 in which the petitioner and one Alice Custeau testified. The petitioner related the circumstances concerning the accident and testified that he received a back injury.

Mrs. Custeau witnessed that the petitioner complained to her that his back hurt him. The record shows that after the testimony had been given by the petitioner and Mrs. Custeau the hearing was continued. On November 27, 1967 the Commissioner rendered his first decree. He found factually that the petitioner seasonably reported the accident. He also found that medical evidence was essential to petitioner's case and that the matter be held in abeyance pending impartial medical examination. The hearing was set for a later date following receipt of the impartial medical report.

The next step in the procedure took place on February 20, 1968 when Dr. John P. Greene, the impartial medical examiner, was present and testified. He was examined and cross-examined by counsel representing the parties. He also submitted a written report which became part of the record. Subsequent to the hearing on March 7, 1968 the Commissioner made another decree in which he found:

"It is found that the employee's story is true concerning the fall, and that he

sustained an injury within the meaning of the Workmen's Compensation Act based upon his story on which he suffered a total incapacity to work for a period of three months, following which he should have been able to resume full activity except for the complaints he had due to certain pre-existing degenerative changes."

The decree went on to point out that there was insufficient evidence upon which the Commissioner could make a finding as to average weekly wage and so the matter was again continued in order for counsel to present evidence in this area. On April 26, 1968 a third decree was issued containing an order that petitioner be paid compensation at the rate of $33.73 per week until further order of the Commission. This decree recited that counsel had agreed that the wages of the employee were $125.00 per month, plus the statutory allowance for room and board.

■ The rule in this State is well established that the findings of the Commissioner, upon questions of fact, are final if supported by some competent evidence.

" 'Upon either finding by the Commission, in favor or against the moving party, if it is apparent that the Commission has disregarded evidence which has probative force in favor of the party against whom the decision has been rendered, the decision will be set aside.' " Albert's Case, 142 Me. 33, 37, 45 A.2d 660, 661.

The Commissioner in his first decree of November 27, 1967 stated:

"In the opinion of the writer medical evidence is essential to insure justice, and the matter is being held in abeyance pending an impartial medical examination by the Commission."

The impartial medical examiner submitted his report which, by agreement, became a part of the case and, in addition, he was examined by counsel for both sides. The petitioner in 1962 suffered back injury as a result of an automobile accident, at which time x-rays were taken. Dr. Greene in his testimony said he was only interested in any change from 1962 until 1965 and in order to detect any changes that may have occurred he made a comparison between the x-rays of 1962 and those of 1965. Quoting from the record of his testimony:

"Q. Correct. In order to do that you had to know what they showed in 1962?

A. Yes.

Q. What did they show?

A. There was some mild degenerative change in the lumbar spine films consistent with his age.

Q. Now, Doctor, there were x-rays in 1965 September?

A. Yes.

Q. And, Doctor, what did these x-rays show?

A. Well—

Q. Again, did you read them, Doctor?

A. I did, yes.

Q. And what did they show?

A. The only additional finding as compared with the previous x-rays was a mild compression at the first lumbar vertebra—not previously noted.

Q. Now, Doctor, this man's complaints were not related to the area of L–1, were they?

A. No, that's correct."

The doctor, in his report, said:

"The radiologist mentions some slight compression of the fourth and fifth lumbar vertebral bodies, but this is extremely minimal as is the evidence of degenerative changes in the lumbar spine. Certainly the x-rays would not suggest any severe disability, at least from a radiological aspect."

Apparently from the doctor's testimony he was unable to reasonably conclude what

type of injury, if any, the petitioner sustained as a result of the fall.

"Q. Doctor, you examined the x-rays taken in September of 1965?

A. Yes.

Q. And those noted, Doctor I believe you told us, compression of L–1?

A. Well, mild.

Q. Mild?

A. Yes.

Q. Would you relate this, based upon his history of complaints, to the accident?

A. Well, I don't think that I can answer this conclusively. No one really knows when this compression occurred. Sometime between 1962 and 1965. Now, whether this was spontaneous or, which is conceivable or frequent, or whether it was a result of a fall—I don't know as I can."

The doctor's testimony in and of itself is too vague and indefinite to support the findings of the Commissioner as to the injury. It then follows that the judgment of the Commission as to the injuries sustained as a result of the fall must rest upon the testimony of the petitioner and Alice Custeau.

"In a compensation case, however, as in a common law action, expert opinion evidence is not always essential to the making of sound findings of fact. The commissioner's conclusion, if rational and natural, and based on facts proven or inferences logically drawn therefrom, must stand even though it lacks the support of expert opinion. * * * Nor can the receipt of inadmissible conjectural opinion alone require reversal of the findings if there is sufficient competent evidence otherwise in the case on which the commissioner's findings may rest." Crowley's Case, 130 Me. 1, 4, 153 A. 184, 185.

See Syde's Case, 127 Me. 214, 142 A. 777, and Swett's Case, 125 Me. 389, 134 A. 200.

Reference is made to Mailman's Case, 118 Me. 172, 106 A. 606, and Larrabee's Case, 120 Me. 242, 113 A. 268.

The petitioner testified that he was in the act of transporting dishes weighing about 200 pounds when he slipped on the steps and the dishes fell on his chest. He said that he hurt his back. The record shows:

"Q. What was your condition before this fall, I mean did you feel all right?

A. Before I worked 1967 I worked 4 months there and I picked up 75 pounds of dishes and put on the shelf and since that time I couldn't pick up nothing.

Q. Have you worked since that time?

A. No.

Q. Have you gone to see doctors?

A. Yes.

Q. Have you been to the hospital?

A. Yes, sure, I have been to take x-rays.

Q. What did they do for you in the hospital, if you know?

A. I don't know what they do. They treat my back and spine, I don't know."

Alice Custeau testified:

"Q. And, did he (Tiko) ever complain to you about a bad back prior to this accident?

A. Never.

Q. And, since this accident?

A. Yes, he hasn't spent one day that he didn't complain about his back hurting him.

Q. Has he gone to see doctors about it?

A. Yes, he has.

Q. And, has he gone to the hospital?

A. Yes."

This above quoted testimony is competent testimony and was obviously accepted by the Commissioner as evidence of injury. The weight and credibility of evidence is for the Commissioner to determine and is not reviewable. Henry's Case, 124 Me. 104, 126 A. 286. There is nothing in the record insofar as the testimony of the petitioner and Custeau is concerned upon which the Commissioner could make a determination of the length of time that petitioner would be disabled. The findings of duration of disability must be tested by the testimony and written report of the doctor.

The Commissioner found:

"* * * that he sustained an injury within the meaning of the Workmen's Compensation Act based upon his story on which he suffered a total incapacity to work for a period of 3 months, following which he should have been able to resume full activity except for the complaints he had due to certain preexisting degenerative changes."

The doctor was asked a hypothetical question, the purpose of which was to develop testimony pertaining to the duration of disability. He answered, according to the record, as follows:

"Q. Doctor Greene, then as I understand your answer to this hypothetical question, you would feel that if you had found a compression and if the compression fracture was due to the fall, you would feel that he shouldn't do heavy lifting for three months, that correct?

A. No, that's not correct. If the compression occurred as a result of the fall he might be disabled from any kind of gainful employment for a period of three months.

Q. Thank you Doctor. But, Doctor, you don't know what type of injury he received on that fall, do you, based upon your history, your findings, your x-rays, or anything else?

A. No, I don't know what it really amounted to.

Q. You—

COMMISSIONER PERKINS:

Q. You are unable to say with reasonable medical certainty whether or not the wedging took place at the time of the fall or later?

A. That's correct. No, I don't know.

MR. RICHARDSON:

Q. Or what injury if any he received at that time, you can't tell two years later, can you Doctor?

A. No."

The doctor also stated that the average period of disability would be "somewhere around 3 months with this type of injury. Now, this can be less or more, it is quite variable." This opinion was based on the doctor's general experience with the type of injury alleged to have been sustained by the petitioner but not predicated upon the particular injury which the petitioner claims he sustained.

■ A careful study of the record demonstrates the fact that the evidence at its best could not possibly support a finding of the Commissioner which would entitle the petitioner to receive more than 3 months of total disability.

■ It is suggested that rendering three decrees is not good practice and tends to cause confusion.

Appeal sustained.

Case remanded to the Commission for the purpose of amending decree of April 26, 1968 to allow compensation for total disability for 3 months from April 26, 1968.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel be paid by the employer to the employee.