642 P.2d 892

**STATE of Arizona, Respondent,**

v.

**Arlen David THOMAS, Petitioner.**

**No. 1 CA–CR 5373–PR.**

Court of Appeals of Arizona,
Division 1, Department A.

March 4, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Rory C. H. Abate, Asst. Attys. Gen., Phoenix, for respondent.

Richard L. Thompson, Phoenix, for petitioner.

## OPINION

FROEB, Judge.

The issue presented in this case is whether certain time computations made by the Department of Corrections in regard to petitioner's sentence constituted *ex post facto* applications of law in violation of the United States Constitution, Article 1, § 10, Clause 1, and the Arizona Constitution, Article 2, § 25. We find no such violation and deny the relief requested by petitioner.

Thomas was convicted in 1959 in Pinal County, Arizona, of grand theft, assault with intent to commit murder, and escape, and received three consecutive terms of imprisonment. He was eventually paroled. Sometime prior to 1977, he was also convicted of a federal offense, sentenced, incarcerated and eventually paroled. In 1977, Thomas was charged by information in this case with two counts of forgery committed in June 1977. A.R.S. § 13–421 and § 13–1647.[1] Pursuant to the terms of a plea agreement, Thomas pled guilty to both counts and, following entry of judgment of guilt, was sentenced in March of 1978 to a term of six to seven years' imprisonment on each count, to run concurrently. The terms were ordered to run consecutively to the previously imposed federal sentence. At that time, Thomas also had not received absolute discharge on one of the Pinal County sentences, a term of five to forty years. An *"Anders"*[2] appeal was filed in this court, and the convictions and sentences were affirmed. *State v. Thomas,* Memorandum Decision No. 1 CA–CR 3330, filed December 12, 1978.

Thomas began these proceedings by filing a petition with the trial court pursuant to rule 32, Rules of Criminal Procedure. He received appointed counsel and additional pleadings were filed. The petition was summarily denied by the trial court, and a timely motion for rehearing was likewise denied. The matter is before this court upon the filing of a timely petition for review. Rules of Criminal Procedure, rule 32.9.

Petitioner's *ex post facto* argument is directed against two instances of changes in the Department of Corrections' computations of statutory time credits against his sentences. The first computation is based on A.R.S. § 31–251,[3] which provides in pertinent part as follows:

§ 31–251. Labor required of prisoners; deduction from sentence for performing labor; forfeiture

A. The department of corrections shall require of each able-bodied prisoner under commitment to the department as many hours of faithful labor each day during his term of imprisonment as prescribed by the rules and regulations of the director of corrections. Such regulations may require retention of earnings for release needs in lieu of cash or clothing allowances authorized by § 31–228.

B. Every prisoner faithfully performing such labor and conforming in all respects to the rules, or if unable to work, but complying in all respects to the rules, shall be allowed, from the maximum term of his sentence, a deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of the term.

On January 16, 1978, the Department of Corrections originally computed petitioner's eligibility for time credits under § 31–251(B) in a manner which we will refer to as "stacking," for the purpose of brevity, as follows: For the first term of each series of consecutive terms, a prisoner was allowed

---

1. All references, unless otherwise indicated, are to statutory designations existing prior to the effective date of the revised criminal code, October 1, 1978.

2. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

3. As amended, Laws 1970, Ch. 112, § 2; Laws 1974, Ch. 137, § 1.

two months per year credit for each of the first two years, four months per year credit for each of the next two years, and five months per year credit for each year thereafter; with regard to the second and all consecutive sentences thereafter, each prisoner would be entitled to five months' credit per year. However, on March 2, 1978, an assistant attorney general issued an informal opinion to the Department of Corrections by letter, which held that the proper interpretation of this statute required "unstacking," as follows: At the beginning of the second consecutive sentence, and each consecutive sentence thereafter, each prisoner would be entitled to only two months per year credit for the first two years, four months per year credit for the third and fourth years, and five months per year credit for each year served thereafter. Following this informal opinion, the Department of Corrections, on July 21, 1978, recomputed petitioner's time credits following the "unstacking" formula. Petitioner alleges that he was thus deprived of twelve months and five days statutory credit.

The second computation at issue here is based on A.R.S. § 31–252,[4] which provides in pertinent part as follows:

§ 31–252. Double time deduction for certain labor as trusty; forfeiture

A. A prisoner under commitment to the department, while working on the public highways or the prison farms as a trusty outside the prison walls and without requiring armed guards, or performing any other assignment of confidence and trust either within or without the prison walls or pursuant to rules and regulations established by the department, shall be allowed double time while so employed, and each day so employed shall be counted as two days in computing time on his or her sentence which shall be deducted, from the maximum term of such prisoner's sentence.

Prior to November 1, 1979, the Department of Corrections' interpretation of this statute

had been to allow such "two-for-one" credits during the six-month period of "mandatory release" provided for in A.R.S. § 31–411(B),[5] which provides:

Every prisoner shall be temporarily released according to the rules and regulations of the department one hundred and eighty days prior to the expiration of the maximum sentence and shall remain under control of the department of corrections until expiration of the maximum term specified in the sentence. . . .

Petitioner alleges that on or about November 1, 1979, the Department of Corrections changed its interpretation and began denying such two-for-one credits during the period of mandatory release. A new computation of petitioner's statutory time credits, made on August 22, 1980, therefore resulted in a loss of four months and eleven days' credit to him.

The thrust of petitioner's argument is that both of these recomputations by the Department of Corrections constituted *ex post facto* applications of law to him. We do not agree.

■ Statutes which detrimentally affect parole eligibility are unconstitutional as applied to a prisoner charged with a crime committed prior to the enactment of the statute. *State v. Mendivil*, 121 Ariz. 600, 592 P.2d 1256 (1979); *State v. Pendergraft*, 124 Ariz. 449, 604 P.2d 1160 (App.1979).

■ Also, a change in the Department of Corrections' interpretation which would require a prisoner to serve a longer sentence may amount to an *ex post facto* increase in punishment where such administrative interpretation has the "force and effect of law." *Love v. Fitzharris*, 460 F.2d 382 (9th Cir. 1972), *vacated as moot, Fitzharris v. Love*, 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973).[6] In *Love v. Fitzharris, supra*, the court determined that "[a] new administrative interpretation which subjects the prisoner already sentenced to more severe punishment has the same effect as a new

4. As amended, Laws 1974, Ch. 137, § 2.

5. As amended, Laws 1970, Ch. 210, § 3; Laws 1974, Ch. 137, § 4.

6. The court in *Love* noted that the issue involved in that decision—the relationship between two penal code provisions dealing with

statute lengthening his present term . . . or a new court decision making what was lawful when done a crime . . . ." 460 F.2d at 385. We therefore examine the Department of Corrections' interpretations involved in this case to determine if they have the "force and effect of law."

■ First, with regard to the question whether a prisoner is entitled to earn "work release credits" under A.R.S. § 31–252(A) during the period of "mandatory release," we have previously held that a prisoner is not entitled to such credits. *State v. Robertson*, 131 Ariz. 73, 638 P.2d 740 (1981). The interpretation followed by the Department of Corrections since November 1, 1979, is therefore correct. As noted in *State v. Robertson, supra*, the plain language of the statute allowing the "double time" credit required that the prisoner be performing an assignment of "confidence and trust," and such is not the case with prisoners who are mandatorily released pursuant to § 31–411(B). We stated in *Robertson* :

> [I]t is discretionary with the administration of the state prison who shall be assigned to a job receiving two-for-one time under A.R.S. § 31–252; there is no absolute right to work at a position of confidence and trust in the prison. (citation omitted). Clearly, a prisoner under "mandatory release" via A.R.S. § 31–411 has not been placed in a "position of trust or confidence." The statute by its own terms is mandatory, and does not allow the Department of Corrections any discretion as to which prisoners shall be released for the 180-day period.

*Id.* at 76, 638 P.2d at 743.

Furthermore, this result had been suggested in several previous Arizona appellate decisions which predate the time petitioner committed the forgery crimes. *See, e.g., Walsh v. State ex rel. Eyman*, 104 Ariz. 202, 450 P.2d 392 (1969) (double-time credit not applicable to time prisoner spent outside custody of state prison while under extradition to another state since he was not performing an assignment of confidence and trust); *Jones v. State ex rel. Eyman*, 19 Ariz.App. 26, 504 P.2d 949 (1972) (double-time credit not applicable to time spent in county jail); *Batchan v. State ex rel. Eyman*, 5 Ariz.App. 160, 424 P.2d 202 (1967) (prisoner held not entitled to double-time credit for time spent in "quarantine" where he was not actually placed in a position of trust).

■ We decline to regard the prior interpretation of the Department of Corrections allowing two-for-one credit during the six-month period of "mandatory release" as having the "force and effect of law" when it was patently contrary to the clear wording of the statute and the case law in existence at the time petitioner committed the forgeries. Petitioner is not entitled to an erroneous, although more advantageous, interpretation of the statute. The correct interpretation now followed by the Department of Corrections merely reflects the law as it has existed since before petitioner committed the illegal acts.[7] Thus, applying the correct interpretation to petitioner does not amount to an *ex post facto* application of a new law.

■ Second, with regard to "stacking" or "unstacking" of the "good behavior" allowance of § 31–251(B), we find the Depart-

---

parole eligibility—had not been considered by the California courts. The court determined then, that "[a]bsent a court pronouncement on the matter, the interpretation of the relationship between the statutes placed upon them by the administrative agency charged with their enforcement has the force and effect of law." 460 F.2d at 385.

7. We believe this is the determination that is made when the courts declare that the proper construction of a statute in question was "not so unforeseeable as to constitute . . . a viola-

tion of *ex post facto* provisions of the United States and Arizona Constitutions." *State v. Deddens*, 112 Ariz. 425, 430, 542 P.2d 1124, 1129 (1975). *See Mileham v. Simmons*, 588 F.2d 1279 (9th Cir. 1979); *Forman v. Wolff*, 590 F.2d 283 (9th Cir. 1978), U.S. *cert. den.* 442 U.S. 918, 99 S.Ct. 2839, 61 L.Ed.2d 285 (1979). In other words, a subsequent court pronouncement is "not unforeseeable" if it merely states the law in existence at the time the crime was committed.

ment of Corrections' interpretation to be correct. The language of the statute itself indicates that the formula for increasing statutory credits is to be applied to "the maximum term of his sentence." As each sentence in a series of consecutive sentences is separate and distinct, it appears that these credits should be applied to each in succession. The purpose of this statute was both to encourage prison inmates, and on the other hand to protect society, and was not intended as a promiscuous grant of credit to every prisoner. *Rogers v. State ex rel. Eyman,* 5 Ariz.App. 157, 424 P.2d 199 (1967). Both such purposes are better served by granting the credits according to the "unstacking" method, rather than by giving a blanket credit against the maximum sentence of ⁵⁄₁₂th of the total term for each year beyond five years. We further note that an inmate must reach the anniversary of his incarceration date to get the credit authorized under the statute. *Jones v. State ex rel. Eyman,* 19 Ariz.App. 153, 505 P.2d 1044 (1973). Also, prior to the revised criminal code effective date of October 1, 1978,[8] it had been the rule in Arizona that the first term of consecutive sentences had to be completely discharged before a prisoner could begin service of the second sentence. *Mileham v. Arizona Board of Pardons and Paroles,* 110 Ariz. 470, 520 P.2d 840 (1974); *approved, Mileham v. Simmons,* 588 F.2d 1279 (9th Cir. 1979); *State v. Howland,* 103 Ariz. 250, 439 P.2d 821 (1968), *overruled on other grounds, State v. Burchett,* 107 Ariz. 185, 484 P.2d 181 (1971). Thus, the Arizona scheme indicated that each term of several consecutive sentences, being punishment for a separate and distinct offense, must be served independently. It would be incongruous for prisoners to be rewarded by the "stacking" formula; for identical terms of sentences based on identical crimes, one would receive greater credit by serving the sentence consecutively to a previous sentence than another who was serving it alone. For the foregoing reasons, we hold that the "unstacking" computation currently followed by the Department of Corrections is correct. Furthermore, in

light of the rule in Arizona treating consecutive sentences independently, which was in existence at the time petitioner committed the forgery crimes, we find that the prior erroneous Department of Corrections' interpretation of A.R.S. § 31–251(B) did not have the "force and effect of law." Thus, applying the correct Department of Corrections' interpretation to petitioner does not constitute an *ex post facto* violation since the new interpretation merely reflects the law as it existed at the time petitioner committed the forgeries.

We find that the corrected interpretations of the statutes in question by the Department of Corrections have not constituted an *ex post facto* application of the laws to petitioner. The trial court's conclusion that petitioner was not entitled to any relief was fully warranted and its action of denying the rule 32 petition was therefore correct.

Review granted; relief denied.

OGG, P. J., and CORCORAN, J., concur.

8. *See* A.R.S. §§ 31–411, –412; *State v. La-*          *Barre,* 125 Ariz. 497, 610 P.2d 1058 (App.1980).